## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**UNITED STATES OF AMERICA**,

                   Plaintiff,

v.                                          Case Number: 23-cr-40020-TC

**SETH KIRKPATRICK**,

                   Defendant.

## MEMORANDUM AND ORDER AMENDING DETENTION ORDER

On June 14, 2023, the Court conducted a detention hearing in this matter pursuant to 18 U.S.C. § 3142. ECF No. 12. During that hearing, there was a legal dispute regarding the meaning of the phrase "minor victim" contained in 18 U.S.C. § 3142(e)(3)(E) of the Bail Reform Act of 1984 ("Bail Reform Act"), which sets forth the rebuttable presumption in favor of detention for defendants charged with "an offense involving a minor victim" under certain sections of Title 18. The question raised at the hearing was whether the rebuttable presumption applies to the facts here, where the individual communicating with Defendant portrayed herself as a 14-year-old girl but was in fact an adult undercover officer. Defendant and the Government requested the opportunity to brief this disputed legal issue.

The Court made its detention ruling on the record during the hearing and additionally entered a Detention Order on June 16, 2023. ECF No. 13. The Court ruled that the Government established by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person or the community if Defendant were released. *Id.* As the Court stated on the record and again in that Order, the Court's ruling was not based on any rebuttable presumption:

> At the detention hearing, the parties disagreed as to whether there is a rebuttable presumption that applies in this case. The Court ordered the parties to brief this issue and the Court will, if appropriate, address this issue in a subsequent order. But as stated on the record during the hearing, the Court's detention order assumes that there is not an applicable rebuttable presumption that applies in this case.

*Id.* at 4.

On June 26, 2023, the Government filed its Memorandum on this issue and Defendant filed his Memorandum on June 29, 2023. ECF Nos. 14-15. This issue is now before the Court.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Defendant is charged via Indictment with four Counts:

- Count 1, Attempted Coercion and Enticement of a Minor, in which he is alleged to have attempted to persuade an individual who had not attained 18 years of age to engage in sexual activity in violation of 18 U.S.C. § 2422(b);

- Count 2, Attempted Transportation of a Minor with Intent to Engage in Criminal Sexual Activity, in which he is alleged to have knowingly attempted to transport an individual who had not attained 18 years of age from Osage County, Kansas, to Dallas County, Iowa, in violation of 18 U.S.C. § 2423(a) and (e);

- Count 3, Travel with the Intent to Engage in Illicit Sexual Conduct, in which he is alleged to have actually traveled from Iowa to Kansas for the purpose of engaging in sexual conduct with a person between the ages of 12 and 16 in violation of 18 U.S.C. § 2423(b); and

- Count 4, Sexual Exploitation of a Minor—Possession of Child Pornography, in which he is alleged to have possessed visual depictions of a minor who had not attained 12 years of age engaging in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(4)(B).

ECF No. 1 at 1-4.

At Defendant's first appearance in this District on June 12, 2023, the Government moved for pretrial detention. ECF No. 7. The Court scheduled a detention hearing for June 14, 2023, and the Court conducted the hearing that day. ECF Nos. 9, 12. As discussed at the detention hearing,

while the individual communicating with Defendant was portrayed as a 14-year-old girl, the individual was in fact an adult undercover officer.

At the detention hearing, the Government originally moved for detention pursuant to two parts of 18 U.S.C. § 3142(f)(1), alleging that the case involves: "(A) a crime of violence . . ."; and "(E) any felony that is not otherwise a crime of violence that involves a minor victim . . . ."  ECF No. 13 at 2 (noting that the "Government argues that the charged offenses involve a minor victim"). At the hearing, Defendant did not dispute that the Government had a valid basis to move for detention pursuant to 18 U.S.C. § 3142(f)(1)(A) because at least one of charged offenses in the Indictment is a crime of violence.[1]

The Government additionally argued that a rebuttable presumption in favor of detention applies because Defendant is charged with multiple offenses specifically listed in 18 U.S.C. § 3142(e)(3)(E) and each is an "offense involving a minor victim."  Defendant disagreed, claiming that an undercover adult officer is not a minor victim.  Both sides requested the opportunity to brief this disputed issue, which is now before the Court.  ECF Nos. 14-15.

Despite this outstanding legal issue, the Court entered an order detaining Defendant based on the Government's ability to move for detention pursuant to 18 U.S.C. § 3142(f)(1)(A).  ECF No. 13.  For the purposes of that order, the Court did not find that there was an applicable rebuttable

---

[1]     Because there was a dispute as to whether all four Counts charged in the Indictment were crimes of violence, the Government additionally alleged that it had a basis to move for detention pursuant to 18 U.S.C. § 3142(f)(1)(E).  In a footnote, Defendant now concedes that all four Counts in the Indictment are crimes of violence.  ECF No. 15 at 2 n.1.  For the clarity of the record, the Court finds that the Government did not have a basis to move for detention pursuant to 18 U.S.C. § 3142(f)(1)(E) because all of the charged crimes are crimes of violence and therefore fall outside of 18 U.S.C. § 3142(f)(1)(E).  *See United States v. Ingle*, 454 F.3d 1082, 1084 (10th Cir. 2006) (stating that when a crime of violence is involved, the judicial officer must hold a hearing pursuant to § 3142(f)(1)(A)).  Even if the Court found that 18 U.S.C. § 3142(f)(1)(E) applied, it would not change the outcome of this Order.

presumption and instead stated that it would address the disputed issue in a subsequent order. *Id.* The Court held that even in the absence of a rebuttable presumption, the Government established by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person or the community. *Id.*

## II.    ANALYSIS

### A.    STANDARDS FOR STATUTORY INTERPRETATION

In interpreting a statute, the Court must give language its plain meaning unless the statute is ambiguous. *In re Doll*, 57 F.4th 1129, 1139-40 (10th Cir. 2023) (citing cases). "Whether a statute is ambiguous 'is determined [not only] by reference to the language itself, [but as well by] the specific context in which that language is used, and the broader context of the statute as a whole.'" *Id.* at 1140 (quoting *Yates v. United States*, 574 U.S. 528, 537 (2015) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). If a statute is unambiguous, the "'inquiry begins with the statutory text, and ends there as well.'" *National Ass'n of Mfrs. v. Dep't of Def.*, 199 L. Ed. 2d 501, 138 S. Ct. 617, 631 (2018) (quoting *BedRoc Limited, LLC v. United States*, 541 U.S. 176, 183 (2004) (plurality opinion)).

A statute is ambiguous, however, when "its text, literally read, admits of two plausible interpretations . . . ." *In re Doll*, 57 F.4th at 1139-40 (quoting *Graham Cty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 545 U.S. 409, 420 n.2 (2005)). In that instance, the Court may "seek guidance from Congress's intent, a task aided by reviewing the legislative history" in addition to considering "which interpretation best fits the statutory language . . . ." *In re Kinney*, 5 F.4th 1136, 1145 (10th Cir. 2021) (internal quotations omitted), *cert. denied sub nom. Kinney v. HSBC Bank USA, N.A.*, 214 L. Ed. 2d 131, 143 S. Ct. 302 (2022); *see also United States v. Jefferson*, 989 F.3d 1173, 1177-78 (10th Cir. 2021) (citing cases for the proposition that the

court may look to the traditional cannons of statutory construction to inform its interpretation and to "seek guidance from Congress's intent" only if a statute is ambiguous), *cert. denied*, 211 L. Ed. 2d 188, 142 S. Ct. 353 (2021).

**B.    THE INTERPRETATION OF THE BAIL REFORM ACT**

In considering the language of § 3142(e)(3)(E), the context in which the language is used, and the broader context of the Bail Reform Act as whole, the Court finds the phrase "involving a minor victim" admits to only one reasonable interpretation. The language is not limited to actual minor victims, as Defendant urges, but instead encompasses intended minor victims, too. The Court first begins with an overview of the provisions of the Bail Reform Act using the phrase "minor victim," to lend context to the line of cases interpreting this language, including other provisions of the Act that use the same phrase.

**1.    Overview of the Bail Reform Act and its References to a "Minor Victim"**

The Bail Reform Act governs pretrial release and detention. 18 U.S.C. § 3142. "Generally, courts apply a presumption in favor of pretrial release." *See United States v. Bustamante-Conchas*, 557 F. App'x 803, 805 (10th Cir. 2014) (per curium). The Bail Reform Act authorizes the Court to detain a criminal defendant pending trial only if it determines that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e).

As relevant to this Order, the Bail Reform Act references "minor victim" in four places. *First*, if a court orders the defendant released on conditions, it must order electronic monitoring and certain additional conditions in "any case that involves a minor victim" under specified sections of Title 18. 18 U.S.C. § 3142(c)(1)(B). *Second*, it establishes a rebuttable presumption in favor of detention in certain types of cases, including:

> an offense involving a minor victim under section 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425 of this title.

18 U.S.C. § 3142(e)(3)(E). *Third*, the Act authorizes the Government to move for detention in certain types of cases, including "any felony that is not otherwise a crime of violence that involves a minor victim . . . ." 18 U.S.C. § 3142(f)(1)(E). *Fourth*, in determining whether a court can fashion conditions of release, it requires consideration of "the nature and circumstance of the offense charged, including whether the offense . . . involves a minor victim." 18 U.S.C. § 3142(g)(1).

The "minor victim" language appears in the Bail Reform Act as the result of two acts that amended the Bail Reform Act. In 2003, Congress enacted the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 ("PROTECT Act"). PROTECT Act, S. 151, 108th Cong., Title II (2003). Section 203 of the PROTECT Act amended the Bail Reform Act to add the minor victim language to § 3142(e)(3)(E), which established the rebuttable presumption provision that is at issue in this case. *See id.* (adding "of this title, or an offense involving a minor victim under section 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425 of this title").

In 2006, Congress then enacted the Adam Walsh Child Protection and Safety Act of 2006 ("Adam Walsh Act"). While the PROTECT Act established the federal government's role in the AMBER alert system and was aimed at strengthening law enforcement's ability to investigate and prosecute violent crimes against children, the Adam Walsh Act created new sex offender registration and notification standards, expanded the number of sex offenses to be captured by registration, and created new offices, websites, and other federal programs. The title of Section

6

216 of the Adam Walsh Act is "Improvements to the Bail Reform Act to address sex crimes and other matters."  Adam Walsh Act, 109-248, July 27, 2006, 120 Stat 587 (quoting the title of that section).  As relevant here, the Adam Walsh Act amendments to the Bail Reform Act included inserting the language found in: 18 U.S.C. § 3142(c)(1)(B) (requiring certain conditions of release, including electronic monitoring, in "any case that involves a minor victim"); § 3142(f)(1)(E) (authorizing the government to move for detention for defendants charged with "any felony that is not otherwise a crime of violence that involves a minor victim . . . "); and § 3142(g)(1) (requiring the court to consider the nature and circumstances of the offense charged, including whether the offense "involves a minor victim . . . ").

Counts 1-3 of the Indictment are charged under statutes that are specifically referenced in the rebuttable-presumption subsection, § 3142(e)(3)(E): 18 U.S.C. § 2422(b), Count 1; and 18 U.S.C. § 2423(a), (b) and (e), Counts 2 and 3.  *See* ECF No. 1.[2]  Although the Bail Reform Act has a definitions section, that section does not define "minor victim" or provide any other relevant definitions.  *See generally* 18 U.S.C. § 3156.

---

[2]     Count 4 of the Indictment charges Defendant with Sexual Exploitation of a Minor—Possession of Child Pornography, pursuant to 18 U.S.C. § 2252(a)(4)(B).  Congress did not include 18 U.S.C. § 2252(a)(4)(B) in the Bail Reform Act as either a basis for the application of the rebuttable presumption or as a basis to move for detention.  In fact, while Congress specifically included § 2252(a)(1)-(3) in the Bail Reform Act, § 2252(a)(4)(B) is not referenced. Because this Count unquestionably involves a minor victim, it is a crime that weighs in favor of detention pursuant to 18 U.S.C. § 3142(g)(1), but it is not a crime to consider with regard to the potential application of the rebuttable presumption.

### 2.      Other Courts' Interpretations of the Plain Language of the Bail Reform Act

*United States v. Kahn*, 524 F. Supp. 2d 1278 (W.D. Wash. 2007) was the first decision to address the meaning of the phrase "minor victim," narrowly construing it to require an actual minor victim.  But *Kahn* construed the phrase in a vacuum, without considering the entire sentence in which the phrase appears.  As discussed below, the majority view since *Kahn* has rejected this approach and instead has analyzed the meaning of the phrase by considering both the language itself and the specific context of the sentences in which the language appears.  After independently analyzing the relevant sentences in the Bail Reform Act, the Court agrees with the majority view and concludes that Defendant is charged with "an offensive involving a minor victim" under § 3142(e)(3)(E).

### a.      The Minority View—*Kahn*

Relying on *Kahn*, Defendant urges the Court to apply dictionary definitions to define the statutory phrase "involving a minor victim," which he contends ends the inquiry because the plain language is clear.  Defendant argues that the word "minor" applies only to an actual person under the age of 18.  ECF No. 15 at 4.  *Kahn* found that the mandatory condition of electronic monitoring in § 3142(c)(1)(B) did not apply to a case involving a fictitious minor.  524 F. Supp. 2d 1278.[3]

The defendant in *Kahn* was charged with one count of traveling in foreign commerce with the intent to engage in illicit sexual conduct in violation of 18 U.S.C. § 2423(b).  *Id.* at 1279.  According to the criminal complaint, the defendant was arrested in Seattle, Washington, after traveling from Canada to Seattle to pay to have sex with a 38-year-old woman and her 13-year-

---

[3]      Although *Kahn* concerned the interpretation of the electronic monitoring provision of the Bail Reform Act, § 3142(c)(1)(B), which is not at issue here, its interpretation of the phrase "involves a minor victim" is relevant to the interpretation of similar language appearing in other provisions of the Bail Reform Act.

old daughter.  *Id.*  But the person with whom the defendant had communicated, the 38-year-old-woman, was an undercover law enforcement officer and the 13-year-old daughter was fictitious. *Id.*

The government contended that § 3142(c)(1)(B)'s requirement of mandatory electronic monitoring applied because the defendant was charged under § 2423(b), one of the listed statutes in the Bail Reform Act's subsection requiring electronic monitoring and other mandatory conditions.  *Id.* at 1281-82; *see also* 18 U.S.C. § 3142(c)(1)(B) (listing statutes).  The government argued that because "no actual minor victim is necessary to *convict* under § 2423(b), no such victim is necessary to trigger the mandatory pretrial release conditions of the Walsh Act Amendments." *Id.* (emphasis original).  In other words, that provision of the Bail Reform Act could best be understood by considering the charging statutes specifically listed in that subsection of the Act.

The court disagreed, employing dictionary definitions to the phrase "minor victim" to conclude that a minor is a person who has not reached full legal age, and a victim is a person harmed by a crime or wrong.  *Id.* at 1282.  Thus, the 38-year-old was not a minor, and a fictitious 13-year-old was neither a victim nor a minor.  *Id.*  Because it found the statutory phrase was clear, the court did not consider legislative intent.  *Id.* at 1283-84 ("Because the statutory language at issue today is plain, the sole function of this Court is to enforce that language according to its terms." (internal quotations and brackets omitted)).  Using the logic employed by *Kahn*, Defendant argues here that "minor victim" requires an actual minor victim, not an intended minor victim. Other than *Kahn*, Defendant does not cite to any other court decision supporting this interpretation of the Bail Reform Act.  *See generally* ECF No. 15.

b.    **The Majority View Post-*Kahn***

Since the 2007 *Kahn* decision, courts interpreting the language "involving a minor victim" in § 3142 have rejected *Kahn*'s interpretation of the phrase, instead employing an approach that considers the overall content of the sentence in which the phrase appears. *United States v. Rizzuti*, 611 F. Supp. 2d 967 (E.D. Mo. 2009), also involved interpretation of § 3142(c)(1)(B). Rather than isolating the phrase "involving a minor victim" from the rest of the sentence in the statute, the *Rizzuti* court focused on the entire sentence encompassing that language, including the Bail Reform Act's citation to specific criminal statutes that directly follow the "involving a minor victim" phrase:

> Of particular importance, however, is the fact that in § 3142(c)(1)(B) Congress included a reference to specific statutes to restrict the application of the mandatory conditions of release provision. By referring specifically to § 2422 [the count under which the defendant was charged], Congress included the scope of the illegal activity proscribed by § 2422. *See Dir., Office of Workers' Compensation Programs, U.S. Dep't of Labor v. Peabody Coal Co.,* 554 F.2d 310, 323 (7th Cir. 1977) ("Undoubtedly, Congress may employ a general reference when adopting statutory provisions set out in an independent statute."). Section 2422 expressly includes "attempt" activity and has been construed by the Eighth Circuit Court of Appeals, agreeing with the reasoning of sister courts, to include conduct directed by defendants unknowingly at undercover law enforcement officers, if the defendant intended to victimize a person under the age of 18.

*Id.* at 970; *see also United States v. Phillips*, No. 3:06-CR-47, 2009 WL 10711323, at *3 (N.D.W. Va. Jan. 30, 2009) (using similar logic to conclude that the "rebuttable presumption found in Section [3142](e) applies in situations where the 'minor victim' is actually a fictitious minor").[4]

---

[4]     Although *Rizzuti* is most often cited for its counterargument to *Kahn*, the court in *Phillips*, issued just a few months before *Rizzuti*, employed a similar analysis as to the rebuttable presumption provision that appears in § 3142(e)(3)(E). That court rejected *Kahn*'s interpretation, characterizing it as ignoring "the underlying reason for the enactment of these statutes." *Id.* at *2. Instead, *Phillips* focused on reading the subsection of the Bail Reform Act in harmony with the

Subsequent decisions issued by the Central District of Illinois considered *Kahn* and *Rizzuti* in construing 18 U.S.C. § 3142(f)(1)(E), which authorizes the government to seek pretrial detention for "any felony that is not otherwise a crime of violence that involves a minor victim . . . ." In *United States v. Schuetz* ("*Schuetz I*"), No. 12-MJ-3046, 2012 WL 2923171, at *4 (C.D. Ill. July 18, 2012), the court applied the same line of reasoning as *Rizzuti* to conclude "that the phrase 'involves a minor victim' in § 3142(f)(1)(E) is a categorical term that refers to the category of crimes that harm minors." *Id.* at *4. Because the defendant was charged with transmitting obscene material to a person he believed to be a minor, he was therefore "charged with a crime that involves a minor victim as that term is used in the Bail Reform Act, and the Government has the authority to move for detention under § 3142(f)(1)(E)." *Id.*; *see also United States v. Schuetz* ("*Schuetz II*"), No. 12-MJ-3046, 2012 WL 3185905, at *4 (C.D. Ill. Aug. 2, 2012) (reviewing the magistrate judge's detention order pursuant to 18 U.S.C. § 3145 and reaching the same conclusion). To date, while additional courts have followed this same analysis to reach the same conclusion as to the meaning of the minor victim phrase, it does not appear that any court has embraced *Kahn*'s narrow interpretation of the phrase.[5]

---

criminal statutes it cites, noting that the statutes for which defendant was charged involved illegal intent—attempted internet enticement of a minor and traveling with the intent to engage in illicit sexual conduct in violation of 18 U.S.C. §§ 2422 and 2423. *Id.* Therefore, it would make little sense to interpret the statute as imposing fewer restrictions on criminal defendants who possess the same intent as those alleged to prey on actual minors but who are only prevented from placing actual minors in danger by the presence of effective law enforcement. *Id.* at *3. That court ultimately concluded that the "rebuttable presumption found in Section [3142](e) applies in situations where the 'minor victim' is actually a fictitious minor." *Id.*

[5]     *See United States v. Larson*, No. 21-CR-41-JED, 2021 WL 2222737, at *6 (N.D. Okla. June 2, 2021) (finding that the rebuttal presumption applied and focusing on the fact that the criminal statute with which the defendant was charged criminalized conduct directed by defendants unknowingly at undercover law enforcement officers); *United States v. Lama*, No. 3:19-CR-167-J-34MCR, 2021 WL 146905, at *5 (M.D. Fla. Jan. 15, 2021) (finding that the

Although not addressed by the parties, the Second Circuit also has issued a persuasive opinion addressing § 3142(f)(1)(E). *See United States v. Watkins*, 940 F.3d 152, 166 (2d Cir. 2019). In *Watkins*, the Second Circuit construed the phrase "in a case that involves" as it appears in § 3142(f)(1)(E), which is the subsection that authorizes the government to move for detention in "a case that involves . . . any felony that is not otherwise a crime of violence that involves a minor victim or that involves the possession or use of a firearm or destructive device. . . ." *Id.* The Second Circuit concluded that a charge of possession of ammunition as a convicted felon was a crime of violence, triggering a detention hearing under § 3142(f)(1)(A). *Id.* The Second Circuit stated that even if it were not a crime of violence, "the Government would still have been entitled to a detention hearing" under § 3142(f)(1)(E)." *Id.* at 165. In reaching this conclusion, the Second Circuit construed § 3142(f)(1)(E)'s phrase "that involves" to implicate "factual details surrounding the charged conduct." *Id.* at 166. Consequentially, "when analyzing whether the Government is entitled to a detention hearing under § 3142(f)(1)(E), we may consider the actual conduct at issue in the specific case." *Id.*

The Second Circuit found that the legislative history of the Adam Walsh Act supported this broad interpretation of the word "involves."

> In order to afford minor victims of crime the greatest degree of protection, Congress added § 3142(f)(1)(E), which authorizes a pretrial detention hearing for any individual who commits a felony "that involves a minor victim" or, as relevant to Watkins, "that involves the possession or use of a firearm." By using the phrase "that involves" in this subsection, Congress clearly intended for courts to pierce the veil of the charged offense and consider the

---

rebuttable presumption applied in a case involving an undercover law enforcement official posing as a 12-year-old and noting that the statute under which defendant was charged criminalized the conduct at issue); *United States v. Howell*, No. 2:17-CR-00248-DCN, 2017 WL 4411037, at *2 (D. Idaho Oct. 3, 2017) (finding that the rebuttal presumption applied given that "[n]othing in the Bail Reform Act distinguishes between the offense listed in § 3142(e)(3)(E) which involve 'actual' minor victims and those that do not").

> conduct underlying the offense, including who was harmed and whether any firearms were used in the course of committing the offense. If courts could not do so, felons who clearly pose the risks contemplated by the Adam Walsh Act (*i.e.*, by targeting minors or employing firearms) might not be subject to detention hearings unless the involvement of a minor or possession or use of a firearm was an element of the charged crime.

*Id.* at 166.

The Second Circuit also considered another subsection of the Bail Reform Act that was amended by the Adam Walsh Act: § 3142(c)(1)(B), which requires certain mandatory conditions for defendants charged under specific statutes under Title 18 involving a minor victim. *Id.* Like other courts considering this subsection, the Second Circuit focused on the import of the cited sections of Title 18. *Id.* at 167. Although most of the listed statutes criminalized conduct with minors, not all did. *Id.* Therefore, "Congress must have intended for judicial officers to look beyond the elements of the charged offense to determine whether any minors were 'involved' in the particular offense committed." *Id.* The Second Circuit concluded that "the phrase 'that involves' in § 3142(f)(1)(E) warrants a conduct-specific inquiry in which the judicial officer may look beyond the elements of the charged offense to consider the actual conduct underlying the arrestee's charged offense." *Id.* This broad interpretation of the word "involves" further supports the majority view.

### 3.     This Court's View: The Plain Language of the Bail Reform Act Encompass Intended Minor Victims

The majority view properly holds that statutory interpretation does not begin and end by applying dictionary definitions to selected words appearing within a longer sentence. In other words, the "meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used." *Deal v. United States*, 508 U.S. 129, 132 (1993); *see also State of Utah v. Babbitt*, 53 F.3d 1145, 1148 (10th Cir. 1995) ("In determining the meaning of a statute,

we look at not only the statute itself but also at the larger statutory context."). While "[o]rdinarily, a word's usage accords with its dictionary definition . . . the same words, placed in different contexts, sometimes mean different things." *Yates*, 574 U.S. at 537-38 (also collecting cases in which the Supreme Court affirmed that identical language may convey varying meanings when used in different statutes or even different provisions of the same statute). The majority view "give[s] effect, if possible, to every clause and word of a statute." *United States v. Smith*, 756 F.3d 1179, 1187 (10th Cir. 2014) (quoting *Duncan v. Walker,* 533 U.S. 167, 174 (2001)). This Court agrees with the majority view that the only reasonable interpretation of the phrase requires consideration of all parts of the relevant statutory sentence, leading to the conclusion that the phrase "involving a minor victim" is a categorical description of crimes that harm minors.

More specifically, § 3142(e)(3)(E) states that a rebuttal presumption exists "if the judicial officer finds that there is probable cause to believe that the person committed . . . (E) an offense involving a minor victim under section 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425 of this title." The majority view holds that the reference to specific statutes restricts the application of the rebuttal-presumption provision to only those defendants charged under the listed statutes, and the phrase "involving a minor victim" further restricts the category of offenses for which the rebuttable presumption applies. *See Rizzuti*, 611 F. Supp. 2d at 970 (employing the same reasoning with respect to the subsection requiring certain mandatory conditions).

Certainly, the listed statutes encompass conduct directed at an actual minor victim, but *Rizzuti* focused on the fact that the criminal statutes listed expressly include *attempted* conduct as well. *Id*. In *Rizzuti*, the defendant was charged with a violation of § 2422, which expressly

14

includes "attempt" activity.  *Id.*  Congress could have excluded the attempt activity in § 2422, but it did not.  By including the entirety of § 2422 within the rebuttable presumption, "Congress included the scope of the illegal activity proscribed by § 2422." *Id.*

Here, Defendant is charged with both attempt and non-attempt conduct—specifically: Count 1, attempted coercion and enticement of a minor in violation of § 2422(b); Count 2, attempted transportation of a minor with an intent to engage in criminal sexual activity in violation of § 2423(a) and (e); and Count 3, actually traveling with the intent to engage in illicit sexual conduct in violation of § 2423(b).  Defendant does not dispute that courts, including the Tenth Circuit, have interpreted these statutes "to include conduct directed by defendants unknowingly at undercover law enforcement officers, if the defendant intended to victimize a person under the age of 18." *Rizzuti* 611 F. Supp. 2d at 970 (citing Eighth Circuit precedent with respect to § 2422 and noting this is the majority view of its sister circuits); *see also United States v. Sims* 428 F.3d 945, 959 (10th Cir. 2005).[6]  If attempted crimes were excluded from the scope of the rebuttable-

---

[6]     In *Sims*, the defendant had appealed after a jury convicted him of attempting to coerce and entice a minor to engage in sexual acts in violation of § 2422(b) (Count One) and for traveling interstate for the purpose of engaging in sexual acts with a minor in violation of § 2423(b) (Count Two).  428 F.3d at 959.  Both counts stemmed from the defendant's interactions with a fictitious minor, and the defendant argued on appeal that because an actual minor was not involved, he could not be convicted of violating either statue.  *Id.*  The Tenth Circuit rejected the argument.

> Initially, we see nothing impossible about traveling with a specific purpose, which the jury found beyond a reasonable doubt he did.  Therefore, we reject Sims's claim as to Count Two as meritless.
>
> Moreover, as to his Count One conviction for attempting to entice a minor, factual impossibility is generally not a defense to criminal attempt because success is not an essential element of attempt crimes.  We agree with our sister circuits that this general rule applies to the case at bar—that is, it is not a defense to an offense involving enticement and exploitation of minors that the defendant

presumption provisions of the Bail Reform Act, these statutes would not be listed.  Notably, several other statutory references are limited to only certain subsections of that particular statute in contrast to Sections 2422-2423, which are listed in their entirety.

Defendant argues that this construction renders the phrase "involving a minor victim" without meaning.  ECF No. 15 at 5-7.  This was also *Kahn*'s conclusion, reached by considering only the offense charged in that case rather than the entirety of the listed statutes.  *Kahn*, 524 F. Supp. 2d at 1283 (rejecting the government's proposed reading of § 3142(c)(1)(B) because "the term 'minor victim' has no meaning, because in any case where a violation of § 2423(b) [governing transportation of minors] is charged, the Walsh Act Amendment's mandatory pretrial release conditions would be automatic" (brackets added)).  The Court does not find this position persuasive because it erroneously assumes that all the statutes listed in that subsection of the Bail Reform Act involve crimes limited to minor victims.  *See Watkins*, 940 F.3d at 167 (similarly observing that "[w]hile most of the enumerated statutes in this list expressly criminalize conduct with minors, some do not").

The import of the phrase "involving a minor victim" is illustrated by considering the Federal Kidnapping Act, 18 U.S.C. § 1201, the first-listed statute in both subsections (e)(3)(E) and (c)(1)(B) of the Bail Reform Act.  That statute applies to kidnapping of "any person," including specific categories of individuals such as foreign officials and officers and employees of the United States.  18 U.S.C. § 1201(a)(1), (4)-(5).  The phrase "involving a minor victim" is not without meaning in this context.  To the contrary, it explicitly limits the application of the rebuttable

---

falsely believed a minor to be involved.  Therefore, we affirm Sims's convictions on these counts.

*Id.* at 959-60 (10th Cir. 2005) (internal quotations and citations omitted).

presumption to only those defendants charged under the 18 U.S.C. § 1201 with offenses "involving a minor victim" as opposed to a victim who is "any person." This interpretation is in line with the Second Circuit's reasoning regarding the same statutes listed in §3142(c)(1)(B), governing mandatory conditions of release. *Watkins*, 940 F.3d at 166-67. *Watkins* reasoned that because not all of the listed statutes criminalize conduct involving minors, courts must look beyond the mere elements of the charged offenses and instead consider the actual conduct underlying the charged offense. *Id.* at 167.

In sum, this point highlights *Kahn*'s failure to consider all of the cited sections of Title 18 on the overall statutory framework. It further bolsters the reading of the "involving a minor victim" language as clarifying that the Bail Reform Act focuses not just on anyone charged with the specific crimes listed in the Act, but on those crimes only if they involve a minor victim. *See generally Rizzuti*, 611 F. Supp. 2d at 970; *Schuetz II*, 2012 WL 3185905, at *3. In other words, the court must consider the actual conduct of the underlying charged offense. *See generally Watkins*, 940 F.3d at 166-67.

Finally, Defendant argues—and this Court does not disagree—that some cases embracing the majority view consider congressional intent without first finding ambiguity or explicitly making clear how much congressional intent informed their interpretations.[7] Even if all references to congressional intent are eliminated, however, this Court still finds that the majority view sets forth the only reasonable interpretation of the disputed statutory language. Specifically, the Court

---

[7]    *See generally Larson*, 2021 WL 2222737, at *6 ("The Court finds the reasoning in *Rizzuti* more persuasive than the reasoning in *Kahn* and more in line with the stated intent of the Adam Walsh Act."); *Rizzuti*, 611 F. Supp. 2d at 970 ("Congress's stated intention in requiring the described conditions of release was to ensure that children have additional protection from sexual attacks and other violent crimes." (internal quotations omitted)); *Phillips*, 2009 WL 10711323, at *2 ("The rationale for *Kahn* ignores the underlying reason for the enactment of these statutes.").

finds that the specified crimes modify the phrase "involving a minor victim" and that the reach of the Bail Reform Act is commensurate with the reach of these same specified criminal statutes, meaning that the Bail Reform Act extends to conduct involving both actual minors and fictious minors.

### 4.       Congressional Intent

To be clear, the Court does not rely on congressional intent in interpretating the Bail Reform Act's use of the phrase "minor victim" because it finds that the plain language is clear for the reasons set out above.  But even if the Court found that *Kahn* set forth another reasonable interpretation of the statutory language, rendering the statute ambiguous, it would still find that the majority view's approach is most in line with congressional intent and would adopt its interpretation.  *See In re Kinney*, 5 F.4th at 1145 (when statutory language is ambiguous, the Court must look to Congress's intent to decide "which interpretation best fits the statutory language").  In analyzing Congress's intent, the Court looks at the two Acts that amended the Bail Reform Act as well as the Bail Reform Act itself.  *See Burlington N. R. Co. v. Oklahoma Tax Comm'n*, 481 U.S. 454, 461 (1987) (explaining courts may consider legislative history to determine congressional intent when a statute is ambiguous); *see also Schuetz I*, 2012 WL 2923171, at *4 (also considering the PROTECT Act as a whole in construing the language in the Bail Reform Act).

### a.       The PROTECT Act

In analyzing Congress's intended meaning of the disputed language, the Court starts with the PROTECT Act because that Act first introduced the "minor victim" language into the Bail Reform Act in § 3142(e)(3)(E), the provision at issue in this case.  *See Schuetz I*, 2012 WL 2923171, at *4 (acknowledging that the PROTECT Act amended the Bail Reform to include the

18

phrase "involving a minor victim" found in § 3142(e)(3)(E)).  Congress stated its clear intention

in the preamble to the PROTECT Act, which states that it is an act to "prevent child abduction and

the sexual exploitation of children . . . ."  PROTECT Act, PL 108-21, April 30, 2003, 117 Stat 650.

In the context of discussing mandatory-minimum sentences, the House Conference Report

recognized the PROTECT Act's aim in curtailing attempted child abuse, even if the criminal

conduct at issue is directed at an undercover officer:

> Courts all too frequently impose sentences more lenient than those
> prescribed by the sentencing guidelines in cases under chapter 117,
> particularly in situations where an undercover agent rather than a
> child was the object of the enticement.  Yet the offender's conduct
> in such a case reflects a real attempt to engage in sexual abuse of a
> child, and the fact that the target of the effort turned out to be an
> undercover officer has no bearing on the culpability of the offender,
> or on the danger he presents to children if not adequately restrained
> and deterred by criminal punishment.  Likewise, courts have been
> disposed to grant downward departures from the guidelines for child
> pornography possession offenses under chapter 110, based on the
> misconception that these crimes are not serious.

H.R. Conf. R. No. 108-66, 2003 U.S. Code Cong. & Admin. News 683, 685, Joint Explanatory

Statement at 51 (Apr. 9, 2003) (commenting on Title 1 § 103).

These statements reflect Congress's view that conduct aimed at fictitious but intended

minors poses the same level of danger to the community, a primary consideration of the Bail

Reform Act.  *See generally United States v. Demarcus Bristuan Fitzhugh*, No. 16-MJ-30364, 2016

WL 4727480, at *4 (E.D. Mich. Sept. 12, 2016) (citing the same portion of the House Conference

Report in evaluating the factors set out under § 3142(g) and noting that "mandatory sentences

reflect a Congressional determination that individuals who sexually exploit minors are inherently

dangerous").

Considering the other language used in the PROTECT Act further supports the

interpretation that offenses involving a minor victim do not require an actual minor victim.  The

PROTECT Act includes the phrase "actual minor," which appears to be a narrowing or subset of the word "minor."[8]  If Congress intended the use of the words "minor victim" within the Bail Reform Act to be restricted to offenses involving actual minors, it knew how to say so but chose not to do so.  "The difference in language in different parts of the same act further supports the conclusion that Congress intended the amendment to the Bail Reform Act to apply not only to 'actual minors,' but categorically to crimes that harm minors."  *Schuetz I*, 2012 WL 2923171, at *4.

### b.    The Adam Walsh Act

Three years after the PROTECT Act, the Adam Walsh Act embraced a similar purpose as the PROTECT Act.  Although the language at issue in this case does not stem from the Adam Walsh Amendments to the Bail Reform Act, the Court addresses the Act simply because it provides additional context to the phrase as it appears in other subsections of the Bail Reform Act.  The Adam Walsh Act was designed "[t]o protect children from sexual exploitation and violent crime, to prevent child abuse and child pornography, to promote Internet safety, and to honor the memory of Adam Walsh and other child crime victims."  109 P.L. 248, 109 Stat. 587.

The Adam Walsh Act's amendments to the Bail Reform Act used similar or identical language from the PROTECT Act.  Nothing before the Court suggests that Congress intended the phrase to mean something different than how the phrase was already used in the Bail Reform Act

---

[8]       *See* 18 U.S.C. §§ 2256(11) (defining the word "indistinguishable" to mean that "the depiction is such that an ordinary person viewing the depiction would conclude that the depiction is of an actual minor engaged in sexually explicit conduct"); 2252A(c)(1)(B)(2) (stating it was an affirmative defense that "the alleged child pornography was not produced using any actual minor or minors"), 2252A(a)(3)(B)(ii) (including within the statue's scope "a visual depiction of an actual minor engaging in sexually explicit conduct"), 2252A(e) (stating that certain nonphysical identifying information is generally inadmissible and that the jury shall be instructed that it cannot draw an inference from the absence of the evidence in deciding whether child pornography depicts an actual minor).

by virtue of the PROTECT Act's amendments made just three years prior.  The Adam Walsh Act does not use the phrase "actual minor," but, as one court noted, three other sections of the Adam Walsh Act use the word "actual" to modify "human being," which is significant because, again, "[w]here Congress includes particular language in one section of a statute but omits it in another . . . , it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Castaneira v. Mayorkas*, No. 1:22-CV-01485-RCL, 2023 WL 4420237, at *9 (D.D.C. July 10, 2023) (citing Adam Walsh Act, Pub. L. No. 109-248 §§ 502(a)(1), (4), 503(a), 120 Stat. at 625-26 (codified at 18 U.S.C. §§ 2257(a), (h)(2)(A)(i), 2257A(a)) and quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)).

Again, there is little doubt that the Adam Walsh Act was intended broadly to protect children, proactively prevent abuse, and make the internet safer for children.  These central goals are certainly enhanced by targeting individuals who are attempting to abuse children.

### c.      The Bail Reform Act

The Bail Reform Act recognizes that despite the presumption of release, there are certain types of crimes for which Congress has created a rebuttable presumption of detention.  The Bail Reform Act was enacted as a response to what Congress viewed as a "bail crisis in the federal courts" and "the alarming problem of crimes committed by persons on [pretrial] release."  *United States v. Salerno*, 481 U.S. 739, 742 (1987) (discussing legislative history).  The Bail Reform Act was enacted to provide judges with the authority to make detention decisions that "give appropriate recognition to the danger a person may pose to others if released."  *Id.*  And the rebuttable-presumption subsection in particular "reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial."  *United States v. Stone*, 608 F.3d 939, 945-46 (6th Cir. 2010) (collecting circuit-level cases reaching the same conclusion; *see also*

*United States v. James*, No. 01-40001-03-DES, 2001 WL 681273, at *3 (D. Kan. Apr. 16, 2001) (discussing the rebuttable presumption that arises in certain narcotics cases and noting that it "represents a Congressional finding that narcotics violators as a group are likely to flee and to engage in further criminal conduct undeterred by the pendency of the charges against them").

As courts embracing the majority view have stated, Defendant's interpretation of the minor victim language in the Bail Reform Act leads to results that are clearly contrary to congressional intent.  As one court explained:

> Such a construction would result in a situation where two defendants charged with the same crime, and who pose the same danger to children, would be treated differently based solely on how they were apprehended.  In a case involving the charge brought against Defendant, the Government would be able to seek detention of a defendant who was sending obscene material to an actual minor victim, but not a defendant who thought he was sending such material to a minor victim but instead the recipient was a law enforcement official posing as a minor. . . . [S]uch a reading of the phrase "involves a minor victim" would lead to absurd results.

*Schuetz II*, 2012 WL 3185905, at *4.  In other words, this interpretation largely ignores actual dangerousness and instead would involve a factual inquiry into the age of the person with whom the defendant was communicating, regardless of what the defendant intended with the communications.

The allegations in this case, as detailed at the detention hearing and in the original Detention Order, ECF No. 13, underscore why the interpretation in *Kahn*, and as proposed by Defendant, leads to results that are irreconcilable with congressional intent.  Here, Defendant allegedly engaged in conversations with an individual he believed to be a 14-year-old girl.  In those conversations, he meticulously planned every detail about how he would travel from Iowa to Kansas to pick up the child and take her back to Iowa.  He arranged to pick up the girl at night in the dark, which, as discussed in the chat transcripts, would minimize the chance that he could be

caught.  He specifically told the child not to contact the police because that allegedly had happened before, indicating that this type of behavior is part of a pattern for Defendant.  He solicited child sexual abuse materials from the child, there were discussions that the child would live with him in Iowa in a "daddy/daughter"-type sexual scenario, and they discussed pregnancy prevention.  He then physically drove from Iowa to Kansas, where he was arrested at the pickup location.

The Bail Reform Act properly recognizes that this type of conduct is inherently dangerous, regardless of whether an actual physical child waited in the dark for Defendant or whether Defendant merely believed that he was traveling across state lines because an actual child waited for him in the dark.  The PROTECT Act and the Adam Walsh Act, which were intended to protect children generally and to prevent child abduction and sexual exploitation of children, amended the Bail Reform Act to include language designed to address the risks posed by individuals attempting to exploit children.  Congress could have narrowed the reach of the rebuttable presumption by requiring an actual minor or actual human being, but it did not.  Congress could have excluded any attempt statutes, but it did not.

Instead, Congress included broad language that is properly interpreted to address the very real risks posed by individuals hoping to prey on children.  When the plain language of the relevant statutory provisions is viewed in its entirety, the "minor victim" language is best understood to include the scenario here, where Defendant intended to prey on a minor victim, regardless of whether an actual minor child waited in the dark for him in Kansas.  Even if the Court found the statutory language ambiguous, which it does not, considering congressional intent would result in the same conclusion.  The majority interpretation of these provisions of the Bail Reform Act is in line with congressional intent and is the only reasonable interpretation of the statute.

III.     **CONCLUSION**

For these reasons, the Court concludes that Defendant is charged with a crime that "an offense involving a minor victim" under § 3142(e)(3)(E).

With this Order, the Court amends its previous Detention Order, ECF No. 13, to incorporate the additional determinations in this Order.  The Court specifically finds that a rebuttable presumption of detention applies in this case because there is probable cause to believe Defendant committed a crime listed in 18 U.S.C. § 3142(e).  While the Court determined that detention was necessary without the presumption, the Court finds that Defendant did not rebut this presumption.  But even if Defendant had rebutted this presumption, it would have been yet another factor that supported the Court's detention decision.

Dated July 28, 2023, at Topeka, Kansas.

/s/ Rachel E. Schwartz
Rachel E. Schwartz
United States Magistrate Judge